## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CORD WHITAKER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **UNITED STATES OF AMERICA,** | : | **No. 19-4993** |
| **Defendant.** | : | |

## MEMORANDUM

**Schiller, J.**                                                                                      **November 5, 2020**

Cord Whitaker sued the United States of America under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671, *et seq.* Before the Court is the Government's motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), or in the alternative, summary judgment. For the reasons that follow, the Government's motion to dismiss will be granted and the case dismissed for lack of subject matter jurisdiction.

## I.    FACTUAL BACKGROUND

Valley Forge National Park (the Park) is a federal parkland owned (in large part) by the United States Government and operated by the National Park Service. (Answer ¶ 3.) On March 28, 2019, Whitaker was at the Park with his family when he stumbled and fell over a crack in the Joseph Plumb Martin Trail. (Gov't's Mem. Law Supp. Mot., Ex. 3 ["Pl.'s Dep."] at 14.) The tumble caused Whitaker severe and permanent injuries, including broken teeth, a sprained wrist resulting in carpal tunnel syndrome, and facial scarring. (*Id.* at 37-39.) Plaintiff alleges that the Park negligently failed to maintain the trail in a safe condition and caused his injuries. (Compl. ¶ 22.)

## II. STANDARD OF REVIEW AND JURISDICTION

In deciding a motion to dismiss under Rule 12(b)(1),[1] the Court must first determine whether the Government's motion is a facial or factual attack. *See CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008). A facial attack concerns a purported pleading deficiency, "whereas a factual attack concerns the actual failure of a plaintiff's claims to comport factually with the jurisdictional prerequisites." *Id*. (internal brackets and quotation omitted). If the 12(b)(1) motion makes a factual attack, the burden of proving subject matter jurisdiction is on the plaintiff. *Id.* The district court does not presume the truthfulness of the allegations in the complaint, and the court may make factual findings on the issue of jurisdiction. *Id*.

Here, the Government has not explicitly stated whether its motion brings a facial or factual challenge to this Court's subject matter jurisdiction. However, given the procedural posture of the case and the Government's reliance on material outside of the Complaint, the Court construes the motion as a factual challenge.

"The United States of America, as a sovereign, is immune from suit unless it consents to be sued." *Merando v. United States*, 517 F.3d 160, 164 (3d Cir. 2008). Under the FTCA, the United States waived its immunity from, and conferred federal court jurisdiction over, claims for money damages for personal injury "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment[.]" 28 U.S.C. § 1346(b)(1); 28 U.S.C. § 2674. This waiver of immunity is not without exception. Under 28 U.S.C. § 2680(a), the FTCA's conferral of jurisdiction does not apply to claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of

---

[1] Because the Court has determined it lacks subject matter jurisdiction in this case, it is unnecessary to consider the Government's motion for summary judgment.

2

a federal agency or an employee of the Government, whether or not the discretion involved be abused."

"Congress enacted the [discretionary function exception] to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Baer v. United States*, 722 F.3d 168, 172 (3d Cir. 2013) (citation and internal quotation omitted). "If governmental conduct falls within the discretionary function exception, it is irrelevant whether the United States . . . acted negligently." *U.S. Fidelity & Guar. Co. v. United States*, 837 F.2d 116, 120 (3d Cir. 1988). The Government bears the burden of establishing that the exception applies. *S.R.P. ex rel. Abunabba v. United States*, 676 F.3d 329, 333 (3d Cir. 2012). The Court, however, is mindful that "unduly generous interpretations of the exception[] run the risk of defeating the central purpose of the statute." *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984). If the discretionary function exception applies, then the Court lacks subject matter jurisdiction and the case must be dismissed.

## III. DISCUSSION

Courts generally apply a two-prong analysis to determine whether the discretionary function exception applies. *Merando*, 517 F.3d at 164 (citing *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991)). "First, a court must determine whether the act giving rise to the alleged injury . . . involves an 'element of judgment or choice.'" *Id.* (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). If the challenged action involves the exercise of discretion, the court moves to the second prong of the test, "which requires us to determine whether the challenged action or inaction is of the kind the discretionary function exception was designed to shield." *S.R.P.,* 676 F.3d at 333 (citation and internal quotation omitted). The second part of the test requires the Government's actions and decisions to be based on public policy considerations.

*Berkovitz*, 486 U.S. at 536. In other words, "the discretionary function exception insulates the Government from liability if the action challenged in the case involves the permissible exercise of policy judgment." *Id*.

   A. *The inspection and maintenance of Park trails involves an element of judgment or choice.*

The conduct challenged here is the Government's alleged failure to identify and mitigate against the risk of harm to park visitors posed by a crack in a trail. Plaintiff argues, "the Government cannot show that it is entitled to [discretionary function exception] protections because the Department of the Interior issued a clear directive to 'inspect' and 'identify unsafe conditions and mitigate hazards' of a paved portion of the Joseph Plumb Trail[.]" (Pl.'s Mem. Law Opp'n to Def.'s Mot. [Pl.'s Opp'n] at 3.)

An act does not involve an element of judgment or choice "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz*, 486 U.S. at 536 (1988). For example, in *Berkovitz*, the Supreme Court held that the discretionary function exception did not bar a cause of action that alleged the government issued a product license for a polio vaccine without first receiving certain data from the manufacturer, because under the relevant federal statutory and regulatory provisions the agency "ha[d] no discretion to issue a license without first receiving the required test data[.]" *Id*. at 542.

Conversely, in *Merando*, the Third Circuit held that the Government's challenged actions required the exercise of discretion. 517 F.3d at 162. In that case, a tree collapsed onto a road in the Delaware Water Gap National Recreation Area and crushed the plaintiff's car. *Id*. His wife and daughter were killed instantly. *Id*. As a result, the plaintiff sued "alleging that the Government negligently pruned and failed to remove the hazardous tree." *Id*. at 163. The Third Circuit determined that "[t]he relevant inquiry is whether the controlling statutes, regulations, and

4

administrative policies mandate that the Park Service locate and manage hazardous trees in any specific manner. If not, the Park Service's decisions as to the precise manner in which to do so, and its execution of those decisions, clearly fall within the discretionary function exception[.]" *Id*. at 168. Although there were guidelines that suggested how park officials should deal with hazardous trees, the guidelines merely suggested a general management plan that varied from park to park. *Id*. at 169. Thus, the Third Circuit held the Government's challenged conduct required the exercise of discretion. *Id*. at 172.

The Third Circuit has also held that the National Park Service was immunized under the discretionary function exception for its decision not to post warning signs regarding the dangers of a shoreline barracuda attack. *S.R.P.*, 676 F.3d at 332. In *S.R.P.*, a barracuda bit the plaintiff while he sat on the beach at Buck Island, a unit under the control of the National Park Service. *Id*. at 330. As a result, plaintiff sued the United States under the FTCA, "alleging that the National Park Service failed to adequately warn visitors about the dangers posed by barracudas, and that the National Park Service failed to properly staff Buck Island." *Id*. at 331. The district court granted the Government's motion to dismiss because the discretionary function exception applied. *Id*. The Third Circuit affirmed the district court's ruling and held that the court lacked jurisdiction under the discretionary function exception. In its analysis, the Third Circuit relied heavily on the National Park Service's 2001 Management Policy, which read:

> While recognizing that there are limitations on its capability to totally eliminate all hazards, the Service . . . will seek to provide a safe and healthful environment for visitors and employees. . . . The Service will strive to identify recognizable threats to the safety and health of persons and to the protection of property. . . . When practicable, and consistent with congressionally designated purposes and mandates, the Service will reduce or remove known hazards and apply other appropriate measures, including closures, guarding, *signing,* or other forms of education. In doing so, the Service's preferred actions will be those that have the least impact on park resources and values. . . . These management policies do not impose park-specific visitor safety prescriptions. The means by which public safety concerns are

5

>to be addressed is left to the discretion of superintendents and other decision-makers at the park level, who must work within the limits of funding and staffing.

*Id*. at 335. The Third Circuit held that the policy did not dictate certain procedures or specific actions that must be taken when dealing with safety issues, rather, "local NPS officials are afforded discretion both as to whether to post warning signs and as to the content of such signs." *Id*. Thus, the National Park Service's decision not to post warnings regarding the danger of a barracuda attack was discretionary and involved an element of judgment or choice. *Id*.

Here, the Court holds the Park Service's inspection and maintenance of trails involves an element of judgment or choice. Pursuant to the Organic Act, 54 U.S.C.A. § 100101(a) (formerly 16 U.S.C.A. § 1), the National Park Service is charged with promoting and regulating,

> [T]he use of the National Park System by means and measures that conform to the fundamental purpose of the System units, which purpose is to conserve the scenery, natural and historic objects, and wild life in the System units and to provide for the enjoyment of the scenery, natural and historic objects, and wild life in such manner and by such means as will leave them unimpaired for the enjoyment of future generations.

"To implement this statutory directive, the NPS has adopted various policies and internal operating procedures, including those related to public safety[.]" *S.R.P.,* 676 F.3d at 334-35. The Department of the Interior's Director's Order #50C: Public Risk Management Program, contains language that is strikingly similar to the 2001 Management Policy analyzed in *S.R.P*. Specifically, the Director's Order states:

> The means by which public safety concerns are to be addressed in each park falls under the discretion of the park's superintendent. Park superintendents will seek to identify risks within their jurisdiction and to mitigate these risks within the limits of available resources without compromising the integrity of the environments they are charged to protect.

(Gov't's Mem. Law Supp. Mot., Ex. 14 [D.O. #50C] at 2.) The Director's Order does not dictate a specific manner in which park officials should identify or respond to any safety concerns. On the

contrary, the Director's Order clearly states that public safety concerns are subject to the discretion of the park's superintendent. Further, Jennifer McMenamin, the Facility Manager of Valley Forge National Park, testified that there is no statute, regulation, or service policy related to the maintenance of paved trails. (Gov't's Mem. Law Supp. Mot., Ex. 15 [McMenamin Decl.] ¶ 4.) She also testified that "[t]here is no NPS or Park policy providing for inspection of trails in a particular manner or time frame." (*Id*. ¶ 6.) Finally, she testified that in determining whether remedial action will be taken to address a potential hazard on a trail, the maintenance department considers a number of factors, including the size of the hazard, methods of repair, and whether or not it is elevated. (*Id*. ¶ 11.)

These facts are similar to *S.R.P* and *Merando*, in which there were no statutes or regulations that required specific Government action. Nevertheless, Plaintiff maintains that "Park employees do not have discretion whether or not to inspect to [*sic*] mitigate this hazard[.]" (Pl.'s Opp'n at 4.) But the Director's Order is the only authority Plaintiff identifies as prescribing a certain course of conduct. Plaintiff strongly emphasizes that the Director's Order "requires that the Park do *something* to maintain and 'mitigate the hazards'[.]" (*Id*. at 5.) Plaintiff's characterization of the Director's Order is untenable, given that it states the Park will "seek to" identify and mitigate risks "within the limits of available resources . . . ." (D.O. #50C at 2.) Moreover, the Director's Order *explicitly* states that "the means by which public safety concerns are to be addressed in each park falls under the *discretion* of the park's superintendent." (*Id*. (emphasis added).) The Director's Order unambiguously leaves the means of identifying and mitigating public safety concerns to the

discretion of the superintendent.² Thus, the Government has shown that inspection and maintenance of park trails involves an element of judgment or choice.

   B.  *The Government's actions are subject to policy analysis.*

The second part of the test to apply the discretionary function exception requires that the Government's actions and decisions be based on public policy considerations. *Berkovitz*, 486 U.S. at 536. To meet this standard, there must be a "rational nexus between the Government's decision, and 'social, economic, and political concerns.'" *S.R.P*, 676 F.3d at 336 (citing *Cestonaro v. United States*, 211 F.3d 749, 759 (3d Cir. 2000)). By creating the discretionary function exception, it is evident that "Congress wished to prevent 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984).

Courts have found numerous safety policies similar to the Director's Order here to be based on public policy considerations and therefore subject to the discretionary function exception. *See e.g. Mitchell v. United States*, 225 F.3d 361, 366 (3d Cir. 2000); *Cope v. Scott*, 45 F.3d 445, 451 (D.C. Cir. 1995). Indeed, the Supreme Court has written that "if a regulation allows the employee

---

² Plaintiff also highlights that the Director's Order states, "[a]ll visitor facilities will be inspected per life safety codes and other State and national safety standards to identify unsafe conditions and mitigate hazards." (Pl.'s Opp'n at 15.) Standing alone, that sentence potentially supports Plaintiff's position (depending on the proper definition of "visitor facilities"). However, the next sentence confirms "[t]his will be done in accordance with the NPS policy regarding balance between visitor safety and resource protection. . . . Where specific policy direction exists…that direction will be factored into the planning and design process." (D.O. #50C at 5.) But Plaintiff does not point to any life safety codes, State or national safety standards, or other specific policy direction that would have required the Park Service to repair the crack in the trail and eliminates an element of judgment or choice. Neither party has identified any specific policy guidance, statute, or regulation related to inspection and maintenance of trails beyond Order #50C, which explicitly provides an element of discretion in addressing public safety concerns.

discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations." *Gaubert*, 499 U.S. at 324.

In *Varig Airlines*, the Supreme Court held that the discretionary function exception immunized the Government from tort actions stemming from the Federal Aviation Administration's (FAA) alleged negligence in certifying aircrafts. 467 U.S. at 821. In order to ensure aircraft safety, the FAA devised a "spot-check" compliance review system. *Id*. at 815. The Supreme Court held that the FAA's "spot-check" system is a discretionary matter that "best accommodates the goal of air transportation safety and the reality of finite agency resources." *Id*. at 820. Thus, the FAA's spot-check system was susceptible to policy analysis. *Id*.

Moreover, in *S.R.P.*, the Third Circuit held that the National Park Service's decision not to post additional warning signs regarding the dangers of a barracuda attack relied on public policy considerations. *S.R.P*, 676 F.3d at 336. The court concluded that the National Park Service had to weigh the potential benefits of warning signs against the costs of such warnings. *Id*. Further, it noted that "such a determination is directly related to the National Park Service's mission of preserving national parks while ensuring public safety and is thus firmly grounded in the policy of the regulatory regime." *Id*. at 336-37. Additionally, in *Merando*, the Third Circuit concluded that the subject tree maintenance decisions were susceptible to policy analysis because "the Government had to consider how best to use its limited financial and human resources in a manner that balanced visitor safety with visitor enjoyment and conservation of the Park." *Merando*, 517 F.3d at 172 (citing 16 U.S.C. § 1).

The Government's challenged conduct in this case is also susceptible to policy analysis. Facility Manager McMenamin testified that "Park staff who are in the field regularly keep their

eyes open while on the trails at the Park. If they encounter a condition that they believe to be a hazard, they are instructed to report it into a work request system[.]" (McMenamin Decl. ¶ 7.) The maintenance department considers a number of factors when determining if remedial action is required, including the size of the hazard, methods and costs of repair, and whether or not the hazard is elevated. (*Id*. ¶ 11). The manner in which inspection and maintenance of park trails are performed requires the Park to consider how best to utilize its resources to balance the interests of public safety and conservation. Indeed, trail maintenance and inspection decisions are directly related "to the [National Park Service]'s mission of preserving national parks while ensuring public safety[.]" *S.R.P*, 676 F.3d at 336-37. The Court holds the National Park Service's inspection and maintenance of trails are susceptible to policy analysis, so the discretionary function exception to the FTCA applies to the Government's maintenance of the Joseph Plumb Martin Trail in this case. Thus, the Court lacks subject matter jurisdiction, and the case must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, the Government's motion to dismiss pursuant to Rule 12(b)(1) is granted. The Court lacks subject matter jurisdiction, and the case is dismissed. An Order consistent with this memorandum will be docketed separately.